738 N.W.2d 570 (2007)
2007 WI App 202
In the Matter of the John DOE Petition.
State of Wisconsin ex rel. Adrian T. Hipp, Petitioner,
v.
The Honorable Marshall B. Murray, presiding,[] Respondent.
No. 2007AP230-W.
Court of Appeals of Wisconsin.
Submitted on Briefs January 26, 2007.
Opinion Filed July 17, 2007.
*571 On behalf of the petitioner, the cause was submitted on the petition of Adrian T. Hipp.
On behalf of the respondent, a response was submitted by J.B. Van Hollen, Attorney General, and David C. Rice, Assistant Attorney.
*572 Before FINE, CURLEY and KESSLER, JJ.
¶ 1 FINE, J.
Adrian T. Hipp seeks a writ of mandamus directing the Honorable Marshall B. Murray to give him a proper John Doe hearing under WIS. STAT. § 968.26. Hipp claims that Judge Murray erred by not permitting Hipp to subpoena witnesses Hipp wanted to call at the John Doe hearing. We agree. Accordingly, we grant the writ.

I.
¶ 2 Hipp is incarcerated, and was during the time material to this mandamus proceeding. In October of 2006, Hipp sought a John Doe hearing under WIS. STAT. § 968.26, alleging that Leslie M. Coleman took valuable property from his apartment without his consent shortly after he was arrested. He contended that she was guilty of theft under WIS. STAT. § 943.20(1)(a). The chief judge of the circuit court for Milwaukee County assigned the John Doe hearing to Judge Murray.
¶ 3 A hearing on Hipp's John Doe petition was scheduled for December 13, 2006, and by a document whose file-stamp indicates that it was received by Judge Murray's clerk on November 28, 2006, Hipp indicated that he would be calling eight witnesses at the hearing, including Coleman, and friends of his whose affidavits were attached to the petition, Kathryn Schicker and David Mercado.
¶ 4 On December 13, 2006, Schicker and Mercado were in court. The only other person appearing was John Reddin, a deputy district attorney for Milwaukee County. Reddin told Judge Murray that he "had neglected to produce Mr. Hipp" from Hipp's place of incarceration. The transcript reveals that Judge Murray and Reddin conferred ex parte (that is, without Hipp being either present or a party to the conversation) about the merits of Hipp's petition and Hipp's ability to compel witnesses to testify at the hearing:
THE COURT [addressing Reddin]: [Do you] want to place on the record our conversation this morning?
. . . .
MR. REDDING [sic]: Uhm, I also received a phone call from the person whom he believes stole his property. She is, in fact, the executor of the estate of the victim of the theft for which Mr. Hipp is serving his  his time.
The allegations in those cases were that he  he ran up about $40,000 in charges. I have reviewed the documents of the charge cards, and most of that money was taken in cash; so there's no way to trace what it was used for.
She believes that it was used to buy various things, some of which are the property that is in dispute here.
Judge Murray then noticed two persons in the courtroom. They were Schicker and Mercado. Judge Murray told them what was going on.
THE COURT: Good afternoon. What we're talking about here is a case that Mr. Hipp has brought to the attention of the court. I'm doing an investigation. And so far what I've learned is that there are allegations that things that he left at an apartment once he was arrested have been removed from the apartment by someone. He's alleging that the things were stolen.
I've also learned that Mr. Hipp has  he's serving a sentence for taking money from a person, and I'm not sure but I guess we'll find out if he used that money to purchase the items that he's saying that were allegedly taken; and if that's true, then I don't think he has an argument. *573 Something was stolen from him under  if this were a repo kind of situation, he would have lost it anyway 'cause the items were obtained wrongfully and by use of money that he had no right to.[1]
(Footnote added.) Judge Murray told Schicker and Mercado that the matter would have to be adjourned until January 8, 2007, and that they should not talk to Coleman. Judge Murray also asked them whether they were "given a subpoena by Mr. Hipp."
MS. SCHICKER: He said he sent them in the mail, but we never did get them.
THE COURT: Well, if you receive them, remember that you're under subpoena until the next court date. Okay?
MS. SCHICKER: (Nods head.)
. . . .
THE COURT [addressing Reddin]: Mr. Hipp sent a proposed witness list, and he included Attorney David Feiss [an assistant district attorney for Milwaukee County] and investigator [for the Milwaukee County district attorney's office] Bonnie [sic  should be "Bonny"] Parsons. I don't know if you received that.
MR. REDDING [sic]: I did not.
THE COURT: Okay.
MR. REDDING [sic]: I don't know if he subpoenaed  and I don't  I mean, the way the statute is, he does not have subpoena power. At that time he doesn't have subpoena power. In any event 
THE COURT: Right, but he put them down as witnesses.
MR. REDDING [sic]: He can certainly ask witnesses to come 
THE COURT: Right.
MR. REDDING [sic]:  and be examined.
THE COURT: Okay.
MR. REDDING [sic]: But he has no 
THE COURT: That's right.
MR. REDDING [sic]:  authority to require them.
THE COURT: Thank you.
MR. REDDING [sic]: Thank you.
¶ 5 On December 29, 2006, the Milwaukee County clerk of circuit court issued subpoenas for five witnesses whom Hipp wanted to appear at the January 8, 2007, hearing: Nancy Pearson, identified by Judge Murray's response to Hipp's petition for a writ of mandamus as "the owner of the apartment where Hipp resided" before he was arrested; Jeffrey Polinske, a friend of Hipp's; Feiss; Parsons; and Coleman. Hipp's Wausau lawyer was named on the subpoenas as the person to contact if anyone served had "any questions about this subpoena." The subpoenas were served on Feiss, Parsons, and Coleman on January 4, 2007.
¶ 6 Hipp was produced for the January 8, 2007, hearing. Three of his witnesses, Schicker, Mercado, and Polinske also appeared. Reddin again represented the State and told Judge Murray:
The way the John Doe statute 968.26 reads, Mr. Hipp has a right to produce witnesses voluntarily and to have them examined by himself or you in an effort *574 to discover whether or not there's reason to believe that a crime has been committed.
The only subpoena power that lies in a John Doe, is the Court. It states, the judge may and at the request of the district attorney shall, subpoena  issue subpoenas. We are not there yet. This Court has not found that there is a reason to believe a crime has been committed. There's a difference between producing witnesses and compelling witnesses.
I became aware Thursday or Friday that a number of people including one of my assistants and one of the investigators, had been supposedly been subpoenaed. I looked. I got copies of the subpoenas, and they clearly were without legal basis.
There was an attorney listed on them, and I called them [sic] and told me [sic] that the only reason he let his name be put on the subpoena, because Mr. Hipp was incarcerated so if [sic] the witnesses being subpoenaed could call him and be told these were legal subpoenas.
I explained to them [sic], they were not legal subpoenas. If he wanted to come and make a record, he could do that. He said he didn't want to do that. There is no subpoena power by anyone at this point, until the Court makes a finding that there is reason to believe a crime was committed, then you have subpoena power, not Mr. Hipp.
¶ 7 Judge Murray advised Hipp that at a "John Doe proceeding, neither the clerk, nor you, nor the DA have [sic] subpoena power." Judge Murray's response to Hipp's petition for a writ of mandamus concedes that "Reddin told the persons who had been subpoenaed by the clerk (at the request of Hipp) that they did not have to obey the subpoena and that they did not have to appear before Judge Murray."
¶ 8 At this stage of the proceedings the only issue ripe for review is whether persons filing a John Doe petition may compel witnesses to appear on their behalf. We agree with Hipp that they may.

II.
¶ 9 The parties agree that we review Judge Murray's actions in connection with Hipp's John Doe petition via mandamus. See State of Wisconsin ex rel. Unnamed Person No. 1 v. State, 2003 WI 30, ¶¶ 41, 48, 260 Wis.2d 653, 680, 682-683, 660 N.W.2d 260, 273, 275; see also id., 2003 WI 30, ¶ 23, 260 Wis.2d at 670, 660 N.W.2d at 268 ("[I]t is well settled that a John Doe judge's actions are not directly appealable to the court of appeals because an order issued by a John Doe judge is not an order of a `circuit court' or a `court of record.'"). As we have seen, the issue here is whether the John Doe statute, WIS. STAT. § 968.26, permits a person filing a John Doe petition to compel the appearance of witnesses at the hearing by subpoenas not issued by the John Doe judge. As noted, we conclude that it does.
¶ 10 The first place to start is, of course, with the statute. WISCONSIN STAT. § 968.26 provides, as material:
If a person complains to a judge that he or she has reason to believe that a crime has been committed within his or her jurisdiction, the judge shall examine the complainant under oath and any witnesses produced by him or her and may, and at the request of the district attorney shall, subpoena and examine other witnesses to ascertain whether a crime has been committed and by whom committed. The extent to which the judge may proceed in the examination is within the judge's discretion. . . . If it appears probable from the testimony given that a crime has been committed and *575 who committed it, the complaint may be reduced to writing and signed and verified; and thereupon a warrant shall issue for the arrest of the accused.[2]
(Footnote added.) Unless there is an ambiguity or constitutional infirmity, we apply statutes as they are written. State ex rel. Kalal v. Circuit Court, 2004 WI 58, ¶ 44, 271 Wis.2d 633, 662, 681 N.W.2d 110, 123-124. Our review of Judge Murray's interpretation and application of § 968.26 is de novo. See State ex rel. Reimann v. Circuit Court, 214 Wis.2d 605, 613, 571 N.W.2d 385, 387 (1997). If there is a threshold showing that the complainant has shown in his or her John Doe petition, beyond mere conclusory assertions, that he or she has reason to believe that a crime was committed, see id., 214 Wis.2d at 618-619, 571 N.W.2d at 389-390, the John Doe judge "shall":
 "examine the complainant under oath," and
 "examine . . . any witnesses produced by" the complainant.
Sec. 968.26. Additionally, the John Doe judge "may . . . subpoena and examine other witnesses," and, if so requested by the "district attorney[,] shall, subpoena and examine other witnesses"all "to ascertain whether a crime has been committed and by whom committed." Ibid.
¶ 11 The John Doe judge, of course, has the usual discretion in conducting the hearing. Ibid. ("The extent to which the judge may proceed in the examination is within the judge's discretion."); see also WIS. STAT. RULE 906.11(1) ("The judge shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence."). It is a truism that a John Doe judge cannot comply with the statute's mandate to "examine . . . any witnesses produced by" the complainant unless the complainant has a way to "produce" those witnesses. As Hipp argues, the way is via WIS. STAT. § 885.01(1).
¶ 12 WISCONSIN STAT. § 885.01(1) is the universal mechanism to compel the attendance of witnesses and the production of evidence. It permits subpoenas to be issued "[b]y any . . . clerk of a court . . . to require the attendance of witnesses and their production of lawful instruments of evidence in any action, matter or proceeding pending or to be examined into before any court, magistrate, officer, arbitrator, board, committee or other person authorized *576 to take testimony in the state."[3] (Emphasis and footnote added.) "Any" means any, and, contrary to Judge Murray's argument in his response to Hipp's petition for a writ of mandamus, there is nothing in WIS. STAT. § 968.26 that removes John Doe matters from § 885.01(1)'s universal application.
¶ 13 The parties do not dispute that WIS. STAT. § 968.26 can be used to override a prosecutor's decision to not prosecute. See State v. Unnamed Defendant, 150 Wis.2d 352, 360, 441 N.W.2d 696, 699 (1989) ("[T]he John Doe statute itself requires no participation by the district attorney."); id., 150 Wis.2d at 367, 441 N.W.2d at 702 (Section 968.26 "make[s] it possible for persons to trigger the prosecutorial powers of the state in any kind of criminal action where `probable cause' can be established.") (Heffernan, C.J., concurring) (emphasis by Chief Justice Heffernan); id., 150 Wis.2d at 372, 441 N.W.2d at 704 ("Crime victims should have recourse to the judicial branch when the executive branch fails to respond.") (Day, J., concurring); see also Reimann, 214 Wis.2d at 621, 571 N.W.2d at 390 ("[A] John Doe proceeding is intended as an investigatory tool used to ascertain whether a crime has been committed and if so, by whom."). Thus, we recently recognized:
For some complainants, the John Doe procedures available under WIS. STAT. § 968.26 provide their only entrance to the state courts. Although we believe that circuit court judges must perform some gate-keeping functions under WIS. STAT. § 968.26, we do not here intend to close the doors of the courtroom to those persons who may have reason to believe a crime has been committed.
State ex rel. Williams v. Fiedler, 2005 WI App 91, ¶ 25, 282 Wis.2d 486, 499-500, 698 N.W.2d 294, 300. The John Doe judge also "must recognize that many John Doe petitions are filed pro se by complainants not trained in the complexities of criminal law and procedure." Id., 2005 WI App 91, ¶ 25, 282 Wis.2d at 500, 698 N.W.2d at 300. To say, as Judge Murray contends in response to Hipp's petition for a writ of mandamus, that Hipp can only present the witnesses whom he can persuade to attend, when, as in this case, the local prosecutor has told those witnesses that they need not attend (even if subpoenaed!) is, in essence, to either close the John Doe door to all but prosecutors, or enshrine prosecutors as John Doe gatekeepers.[4] That is not the *577 law. Further, contrary to what Reddin told Judge Murray, a finding under § 968.26 that there is reason to believe that a crime has been committed is not a prerequisite to the issuance of subpoenas as long as, as we have already seen, the petition for the John Doe hearing is not merely "conclusory." See Reimann, 214 Wis.2d at 618-619, 571 N.W.2d at 389-390.

III.
¶ 14 Judge Murray's response to Hipp's petition for a writ of mandamus does not dispute that Hipp's John Doe petition meets the legitimate "reason to believe" threshold recognized by Reimann. Accordingly, Hipp is entitled to his John Doe hearing and have the clerk of courts issue subpoenas to those whom he wishes to have testify at the hearing. We express no opinion as to what remedy those subpoenaed might have except to note that WIS. STAT. § 968.26 permits witnesses to "have counsel present at the examination."
¶ 15 Hipp also seeks an order removing Judge Murray as his John Doe judge, and Reddin from further participation. We have no doubt but that Judge Murray will on remand fulfill his responsibilities as an impartial magistrate. See State v. Washington, 83 Wis.2d 808, 824, 266 N.W.2d 597, 605 (1978).[5] We express no opinion whether Hipp may, on remand, seek relief under either WIS. STAT. §§ 801.58(7) or 971.20(7), the substitution-of-judge statutes in civil and criminal cases, as that issue has not been presented or briefed. We also decline to interfere with the authority of the Milwaukee County district attorney to assign his deputies and assistants as he sees fit. See WIS. STAT. § 978.03(1) & (3).
¶ 16 We grant Hipp's petition for writ of mandamus and direct that on remand he be permitted, as explained in this opinion, to have subpoenas issued for those persons whom he wants to testify at the John Doe hearing.
Writ granted and cause remanded for further proceedings consistent with this opinion.
NOTES
[] Petition for Review
[1] But see Edwards v. State, 49 Wis.2d 105, 113, 181 N.W.2d 383, 388 (1970) ("Theft in sec. 943.20 is defined as the intentionally taking and carrying away movable property of another without his consent and with intent to deprive the owner permanently of possession of such property. Unless the accused can trace his ownership to specific coins and bills in the possession of the debtor, the debtor is the owner of the money in his pocket and it is theft to take it from his possession with intention to permanently deprive him of its possession regardless of what other motive or intention the accused has.").
[2] WISCONSIN STAT. § 968.26 reads in full:

If a person complains to a judge that he or she has reason to believe that a crime has been committed within his or her jurisdiction, the judge shall examine the complainant under oath and any witnesses produced by him or her and may, and at the request of the district attorney shall, subpoena and examine other witnesses to ascertain whether a crime has been committed and by whom committed. The extent to which the judge may proceed in the examination is within the judge's discretion. The examination may be adjourned and may be secret. Any witness examined under this section may have counsel present at the examination but the counsel shall not be allowed to examine his or her client, cross-examine other witnesses or argue before the judge. If it appears probable from the testimony given that a crime has been committed and who committed it, the complaint may be reduced to writing and signed and verified; and thereupon a warrant shall issue for the arrest of the accused. Subject to s. 971.23, if the proceeding is secret, the record of the proceeding and the testimony taken shall not be open to inspection by anyone except the district attorney unless it is used by the prosecution at the preliminary hearing or the trial of the accused and then only to the extent that it is so used. A court, on the motion of a district attorney, may compel a person to testify or produce evidence under s. 972.08(1). The person is immune from prosecution as provided in s. 972.08(1), subject to the restrictions under s. 972.085.
[3] WISCONSIN STAT. § 885.01(1) reads in full:

The subpoena need not be sealed, and may be signed and issued as follows:
(1) By any judge or clerk of a court or court commissioner or municipal judge, within the territory in which the officer or the court of which he or she is the officer has jurisdiction, to require the attendance of witnesses and their production of lawful instruments of evidence in any action, matter or proceeding pending or to be examined into before any court, magistrate, officer, arbitrator, board, committee or other person authorized to take testimony in the state.
[4] We are disturbed by Reddin's presumption to give, and Judge Murray's acquiescence to receive, Reddin's ex parte advice about the scope of Hipp's ability to have issued subpoenas for the production of his witnesses at the John Doe hearing, and we remind the bench and the bar of SCR 60.04(1)(g) ("A judge may not initiate, permit, engage in or consider ex parte communications concerning a pending or impending action or proceeding" other than in carefully delineated circumstances.), and SCR 20:3.5 ("A lawyer shall not: . . . (b) communicate ex parte with [a judge] except as permitted by law or for scheduling purposes if permitted by the court."). See also State v. Washington, 83 Wis.2d 808, 824-825, 266 N.W.2d 597, 605 (1978). The Rules of Professional Conduct were amended, effective July 1, 2007, by S. CT. ORDER 04-07, 2007 WI 4. Supreme Court Rule 20:3.5(b) is unchanged. The new Rules of Professional Conduct may be accessed at: http://www.legis. state.wi.us/rsb/scr/5200.pdf.
[5] On February 9, 2007, Hipp sought an order from us directing the production of transcripts for: November 13, 2006, when, apparently, the December 13, 2006, hearing-date was set; "December 15, 2006" [sicshould be December 13]; and January 8, 2007. Hipp included a letter from his then Wausau lawyer representing that although the lawyer "made several calls to receive the transcript that you requested" he was unsuccessful: "According to the reporter, the judge has instructed her to not complete any transcript, thus none will be available. I asked the reporter why, and no reason was provided. The reporter told me she was sorry, and if there is any problem, to take it up with the judge." (Bolding in original.) The lawyer then told Hipp that he could no longer represent him. The transcripts of the December 13, 2006, and January 8, 2007, hearings are in the Record. The other is not.

Judge Murray's response to Hipp's petition for a writ of mandamus does not contend that Judge Murray invoked that part of WIS. STAT. § 968.26 that permits the John Doe judge to make the proceedings secret. See ibid. ("The examination . . . may be secret."). Accordingly, we trust that Judge Murray will not interfere with Hipp's efforts to get transcripts of the proceedings.