750 N.W.2d 873 (2008)
2008 WI 67
In the matter of the John DOE PETITION:
State of Wisconsin ex rel. Adrian T. Hipp, Petitioner,
v.
The Honorable Marshall B. Murray, presiding, Respondent-Petitioner.
No. 2007AP230-W.
Supreme Court of Wisconsin.
Argued April 10, 2008.
Decided June 20, 2008.
*875 For the respondent-petitioner the cause was argued by David C. Rice, assistant attorney general, with whom on the briefs was J.B. Van Hollen, attorney general.
For the petitioner there was a brief filed by Colleen D. Ball, Wauwatosa, and oral argument by Colleen D. Ball.
¶ 1 ANN WALSH BRADLEY, J.
The Honorable Marshall B. Murray seeks review of a published court of appeals decision granting a writ of mandamus. The writ directed him upon remand to permit the complainant, Adrian Hipp, to have subpoenas issued for those persons he listed as witnesses for a John Doe hearing.[1] The court of appeals concluded that clerks of court may issue subpoenas for John Doe hearings.
¶ 2 Judge Murray maintains that under Wis. Stat. § 968.26, a John Doe judge has exclusive authority to subpoena witnesses for a John Doe hearing. He argues that the court of appeals erred in determining that John Doe complainants may seek to have clerks of court subpoena witnesses pursuant to Wis. Stat. § 885.01.[2]
¶ 3 We determine that a John Doe judge has exclusive authority to subpoena witnesses in a John Doe proceeding based upon the language of the John Doe statute (§ 968.26), the history of its application, and principles of statutory construction. The case does not present the issue of whether a John Doe judge is required to subpoena every witness that a John Doe petitioner requests. We save that issue for another day.
¶ 4 Ultimately, however, we agree with the court of appeals that a writ of mandamus should be granted and we instruct that upon remand the John Doe judge here should issue subpoenas. Accordingly, we affirm the court of appeals, albeit with a different rationale.

I
¶ 5 The basic facts of this case are not in dispute. At the times relevant to the case, *876 Hipp has been incarcerated. In the fall of 2006 Hipp filed a John Doe petition with the Circuit Court for Milwaukee County. The petition alleges that Hipp was arrested and placed into custody in January 2001. After he was in custody, Hipp asked friends to retrieve his personal property from the apartment he had been sharing with Robert Richter. Richter informed one of the friends that Lisa Coleman had already removed the property. When Coleman was contacted, she refused to hand over any property.
¶ 6 The petition also alleges that Hipp's friends contacted the manager of the apartment and provided her with a letter from Hipp authorizing her to release Hipp's property to the friends. However, the only property left in the apartment when the friends arrived was some paperwork and clothing. Hipp states in the petition that he did not give Coleman permission to take his property. Attached to the petition was a list of the property Hipp alleges to have been stolen, affidavits of two of Hipp's friends regarding the allegations in the petition, and a list of witnesses.
¶ 7 The case was assigned to Judge Murray. The first hearing on the matter occurred in November 2006. Hipp, who was a prisoner at the Stanley Correctional Institute, was produced for the hearing. However, he had not been informed that the hearing was to take place. Judge Murray therefore decided that the hearing should be rescheduled.
¶ 8 Nevertheless, Judge Murray proceeded to discuss the nature of the case. He asked the assistant district attorney, John Reddin, for information. Although he produced no witnesses, Reddin proceeded to make assertions regarding the facts of the case to Judge Murray. He stated that Hipp was convicted of credit card fraud against Richter, that Coleman had been Richter's guardian, and that Richter was now deceased. Reddin speculated that any restitution owed by Hipp to Richter would accrue to Richter's estate and that Coleman was a representative of the estate. Thus, it was Reddin's view that the matter in the John Doe proceeding would be better addressed in a civil case rather than in a criminal case.
It appears to me without knowing the facts  and I don't know if this would be a fact  that it appears to me that there may be some self-help going on here of holding property that was apparently abandoned by Mr. Hipp when he was arrested. I don't know if there is an issue of back rent or not, but the whole thing strikes me as being civil in nature, not a crime 
¶ 9 Judge Murray questioned Hipp about the case. Hipp admitted that he had been ordered to pay restitution to Richter's estate and a credit card company. However, he stated that he had "no knowledge of the fact that [Coleman] has anything to do with the estate" and that he "would like to see evidence of that if that's the case. . . ." Hipp reiterated the information in his petition regarding Coleman's actions.
¶ 10 Judge Murray emphasized that it fell upon Hipp to assure that witnesses were present, stating that "it's your responsibility to get your witnesses here. You look at the statute." Hipp then inquired as to how he was to produce witnesses that were not his friends and perhaps unwilling to come. Judge Murray responded: "I'm not the Judge in this case. I am just responding to the petition that you wrote. You have to bring in information to me. I'm just a police officer trying to do an investigation here."
¶ 11 The hearing was rescheduled for December 2006. However, like the November 2006 hearing, the rescheduled hearing was derailed. Reddin stated that *877 he had neglected to produce Hipp, suggested that the hearing be rescheduled, and assured Judge Murray that he would make sure to produce Hipp at a rescheduled hearing. Although Hipp was not present, Reddin and Judge Murray discussed the substance of the case. Reddin told the judge that he had spoken to Coleman. She told Reddin that she was executor of Richter's estate, that Hipp was incarcerated for theft from Richter, and that Hipp had used Richter's credit card for cash such that it was not possible to trace how the money had been used.
¶ 12 Judge Murray noticed two people sitting in the courtroom. They advised the judge that they were witnesses in the Hipp proceeding. Judge Murray told them if Hipp used money taken to buy the property at issue in the case, he did not "think [Hipp] has an argument . . . if this were a repo kind of situation, he would have lost it anyway. . . ." In addition, Judge Murray addressed the issue of the subpoena:
Court clerk: They remain under subpoena?
[Judge Murray]: Yes, were you given a subpoena by Mr. Hipp?
[Witness]: He said he sent them in the mail, but we never did get them.
[Judge Murray]: Well, if you receive them, remember that you're under subpoena until the next court date. Okay?
¶ 13 Reddin then told Judge Murray that Hipp did not have subpoena power under the statute, stating that "the way the statute is, he does not have subpoena power. . . ." While Hipp may ask witnesses to attend, Reddin maintained, he has no authority to require attendance. Judge Murray stated his agreement with Reddin's view. The hearing was rescheduled for January 2007.
¶ 14 Hipp requested the clerk of the circuit court for Milwaukee County to subpoena witnesses for the January hearing. The clerk issued five subpoenas, which listed attorney Jon Schuster as the person to contact with questions.
¶ 15 Reddin sent a letter to Schuster stating that the subpoenas were invalid. He asserted that the January hearing was to determine whether there was "reason to believe" a crime had been committed, and that no subpoenas could be issued until such a determination had been made. Reddin further stated that he had told several of the subpoenaed witnesses that the subpoenas had no legal effect and that they were therefore not required to appear. Further, Reddin represented that he had consulted with Judge Murray, and that Judge Murray had agreed that the individuals were not required to appear. The letter provides in part as follows:
I have advised the three individuals served that these subpoenas have no legal effect and that they are not required to appear. I have consulted with Judge Murray and he concurs with this advice. He did offer that you may appear Monday and make any statements to him that you wish. In the event Judge Murray makes a finding that there is reason to believe that a crime has been committed, and based on that finding orders a John Doe Proceeding, the judge, and only the judge, will have subpoena power.
¶ 16 At the January hearing, Judge Murray began by questioning Hipp regarding the allegations in Hipp's petition. When Judge Murray asked Hipp whether he had any witnesses, Hipp responded that he saw only three of the eight witnesses he had listed and that some subpoenaed witnesses were not in court. Judge Murray responded that Hipp did not have subpoena power:
Mr. Hipp: Your Honor, I provided you with a copy of the proposed witness list, *878 and on the list there were eight individuals named. I see three of them here. I do not know who else may or may not be here in the hallway. . . . I did subpoena them so 
Judge Murray: You don't have subpoena power, sir.
Mr. Hipp: Well, the circuit court issued the subpoenas that I have, that I sent you copies of.
Judge Murray: The clerk of court doesn't have subpoena power.
Mr. Hipp: Understand Your Honor. I have an ability to have witnesses on my half to be present on a John Doe.
Judge Murray: You can ask witnesses to come. You don't have a right to subpoena them.
. . . .
Mr. Hipp: Who has subpoena power, Your Honor?
Judge Murray: If anybody has subpoena power, it's me.
¶ 17 Judge Murray then addressed the nature of the hearing. He stated that it was his job to determine whether there was probable cause. However, Reddin interjected that the proceedings had not yet reached the point where witnesses could be subpoenaed. He acknowledged that he had explained to several witnesses that the subpoenas they had received from the clerk of the circuit court were without legal basis and did not require attending the hearing:
I became aware . . . that a number of people . . . had been supposedly subpoenaed. I looked. I got copies of the subpoenas, and they clearly were without legal basis.
. . . .
I explained to them, they were not legal subpoenas. . . . There is no subpoena power by anyone at this point, until the Court makes a finding that there is reason to believe a crime was committed, then you have subpoena power, not Mr. Hipp.
¶ 18 Judge Murray then asked Hipp to call his witnesses. The witnesses who had appeared for the hearing testified regarding the substance of the case. Hipp also testified. Judge Murray denied the petition. At first he stated that Hipp had failed to show probable cause. However, Reddin again interjected, stating that the appropriate standard was whether there was reason to believe a crime had been committed. Judge Murray agreed and stated that standard had not been met:
Judge Murray: You have not given me evidence. I'm denying your petition for probable cause. I don't find there is probable cause a crime is committed by Miss Coleman or anyone else as it relates to your property. . . .
Reddin: I believe the finding that you need to make, there is not reason to believe a crime has been committed rather than probable cause.
Judge Murray: I'm sorry. There is reason to believe that a crime hasn't been committed and by whom. . . . [3]
*879 ¶ 19 Hipp filed a petition for supervisory writ in the court of appeals. The court of appeals determined that the subpoenas issued by the clerk of court pursuant to § 885.01(1) were valid. It therefore granted the writ and remanded with instructions that Hipp have subpoenas issued for the persons he wants to testify in the proceeding. Hipp v. The Honorable Marshall B. Murray, 2007 WI App 202, ¶ 16, 305 Wis.2d 148, 738 N.W.2d 570. Judge Murray petitions for review.

II
¶ 20 This case presents the issue of whether a John Doe judge has exclusive authority to subpoena witnesses for a John Doe hearing.[4] It does not present the issue of whether a John Doe judge is required to subpoena every witness that a John Doe petitioner requests. We save that issue for another day. Our determination requires that we interpret and apply Wis. Stat. §§ 968.26 and 885.01. Statutory interpretation and application are questions of law that this court reviews independently of the determinations rendered by the circuit court and court of appeals. Haferman v. St. Clare Healthcare Found., Inc., 2005 WI 171, ¶ 15, 286 Wis.2d 621, 707 N.W.2d 853.

III
¶ 21 We begin our discussion by examining the language of Wisconsin's John Doe statute. Wisconsin Stat. § 968.26 provides in relevant part:
If a person complains to a judge that he or she has reason to believe that a crime has been committed within his or her jurisdiction, the judge shall examine the complainant under oath and any witnesses produced by him or her and may, and at the request of the district attorney shall, subpoena and examine other witnesses to ascertain whether a crime has been committed and by whom committed. . . .
¶ 22 The statute provides that the complainant, the district attorney, and the judge each has the ability to bring witnesses to the John Doe proceeding. It sets forth three distinct ways in which this may happen. Once the judge determines that there is reason to believe a crime has been committed, the judge (1) shall examine the complainant and witnesses "produced by" the complainant; (2) at the district attorney's request the judge shall subpoena and examine other witnesses; and (3) the judge may choose to subpoena and examine "other witnesses," that is, witnesses neither produced by the complainant nor requested by the district attorney.
¶ 23 The statute explicitly states that two of the groups of witnesses are examined upon a subpoena being issued, those requested by the district attorney and those the judge chooses to subpoena and examine. It does not expressly provide that witnesses "produced by" the complainant include those subpoenaed at the complainant's request. However, the parties here agree that witnesses produced by the complainant include those who show up to John Doe proceedings voluntarily as well as those who show up under subpoena.
*880 ¶ 24 The parties' view on this point makes sense, and comports with the fundamentals of a fair hearing. A contrary view would preclude the very party with enough at stake to file a petition from having witnesses subpoenaed to a hearing which determines whether there is probable cause to believe that the crime alleged had been committed and by whom.
¶ 25 The question here is who has authority to issue the subpoenas that cause witnesses to be examined in John Doe proceedings. The parties do not dispute that judges have the authority to subpoena witnesses. The statute is explicit that judges "may, and at the request of the district attorney, shall" subpoena witness. In addition, the parties do not dispute that a judge has the authority to subpoena witnesses at the request of the John Doe complainant such that the witnesses are produced by the complainant within the meaning of § 968.26.
¶ 26 Hipp maintains that while the judge in a John Doe proceeding has the authority to issue subpoenas, the judge does not have exclusive authority to issue subpoenas. Rather, he argues that under § 968.26, a complainant may produce witnesses by requesting the clerk of court to issue subpoenas pursuant to Wis. Stat. § 885.01, which provides general authority to court clerks to issue subpoenas in "any action," including John Doe proceedings.[5] The statute, however, is not explicit as to whether the judge's authority to subpoena witnesses is exclusive. In order to answer the question, we turn to the history of Wisconsin's John Doe statute and its application.
¶ 27 There has been a provision for John Doe proceedings in Wisconsin since territorial times. State v. Unnamed Defendant, 150 Wis.2d 352, 363, 441 N.W.2d 696 (1989). Section 2, chapter 369 of the Territorial Statutes of Wisconsin (1839) provided:
Upon complaint made to any such magistrate that a criminal offense has been committed, he shall examine on oath the complainant and any witnesses produced by him, and shall reduce the complaint to writing, and shall cause the same to be subscribed by the complainant; and if it shall appear that any such offence has been committed, the court or justice shall issue a warrant reciting the substance of the accusation. . . .
The provision was in force at statehood, and adopted into the state statutes by the first legislature. State v. Unnamed Defendant, 150 Wis.2d at 363, 441 N.W.2d 696; see also Wis. Stat. ch. 145, § 2 (1849).
¶ 28 The John Doe statute has remained largely the same since 1839. State v. Unnamed Defendant, 150 Wis.2d at 364, 441 N.W.2d 696; see also In Matter of John Doe Proceeding, 2003 WI 30, ¶ 21, 260 Wis.2d 653, 660 N.W.2d 260. The provision that a John Doe judge "may, and at the request of the district attorney shall, subpoena and examine other witnesses" was added to the statute in 1949. § 33, ch. 631, Laws of 1949.
¶ 29 The first case to examine the means by which witnesses come to be examined in *881 a John Doe proceeding is State ex rel. Long v. Keyes, 75 Wis. 288, 44 N.W. 13 (1889). The complainant alleged that a number of persons "wantonly and riotously, in a violent and tumultuous manner" assaulted, beat, bruised, wounded, and ill-treated a man in the city of Madison. Id. at 289, 44 N.W. 13. The judge in the case examined several witnesses, and based upon the evidence presented, subpoenaed other witnesses for more information. One of the witnesses refused to testify, arguing that the judge had no power to compel the attendance of witnesses. Id. at 290, 44 N.W. 13.
¶ 30 This court determined that the words of the statute providing that the judge shall examine "the complainant and any witnesses produced by him" allowed that a judge could subpoena such witnesses. Id. at 293, 44 N.W. 13; Wis. Stat. ch. 195, § 4776 (1889). It stated that the judge could examine witnesses other than the complainant, and that producing witnesses included providing names to the judge, who could then subpoena the witnesses.
Such witnesses must be produced by the complainant. He cannot produce them in any other way than to suggest their names to the magistrate. If they come voluntarily with the complainant, he cannot be said to produce them in any other way than to make them known to the justice as witnesses who know something about the case. . . . They may come voluntarily or on subpoena, and on attachment if necessary. . . . The complainant produces or suggests or names a great many witnesses at the time, or at another time, and at different times during the progress of the examination. They are witnesses, and therefore may be subpoenaed. . . .
If, as in this case, the complainant does not assume to know the facts except on information, he produces or suggests the names of such witnesses as do know the facts, and the magistrate has them brought before him for examination.
Keyes, 75 Wis. at 293-94, 44 N.W. 13. (Emphasis in original.)
¶ 31 The Keyes court examined the general subpoena statute, Wis. Stat. ch. 176, § 4053 (1889), which provided that any justice of the peace, municipal judge, or police justice could issue subpoenas. Id. at 291, 44 N.W. 13. However, it did not determine that a John Doe complainant could produce a witness by having the witness subpoenaed by an entity other than the John Doe judge. Rather, the court tied production of witnesses by the complainant to subpoenas issued by the magistrate.
¶ 32 Thus, the formative Wisconsin case regarding the production of witnesses by a John Doe complainant ties the concept of production to subpoenas issued by the John Doe judge. This relationship has been consistent throughout the history of the application of Wisconsin's John Doe statutes. See, e.g., State v. Noble, 2002 WI 64, ¶ 5 n. 1, 253 Wis.2d 206, 646 N.W.2d 38 (judge directing witness that by virtue of judge's subpoena issued pursuant to John Doe statute, she was compelled to testify); State v. Washington, 83 Wis.2d 808, 813, 266 N.W.2d 597 (1978) (judge issued subpoena); State ex rel. Kurkierewicz v. Cannon, 42 Wis.2d 368, 378, 166 N.W.2d 255 (1969) (noting limitations on witnesses to be subpoenaed and examined); Wisconsin Family Counseling Servs. v. State, 95 Wis.2d 670, 671, 291 N.W.2d 631 (Ct.App. 1980) (judge issued subpoena duces tecum). Hipp does not adduce any cases involving subpoenas in John Doe proceedings issued by entities other than the judge, and we have discovered none.
¶ 33 Hipp's interpretation also runs contrary to the treatment of John Doe proceedings *882 in more recent case law. In Washington, for example, this court examined the nature of John Doe proceedings and the role of judges in conducting them. 83 Wis.2d 808, 266 N.W.2d 597. We determined that § 968.26 does not run afoul of constitutional separation of powers requirements, despite the substantial powers and responsibilities the statute confers upon judges. Id. at 825, 266 N.W.2d 597. Such powers and responsibilities include issuing subpoenas, presiding over the examination of witnesses, considering the testimony, and determining probable cause, all while acting as a neutral magistrate.
It is the responsibility of the John Doe judge to utilize his or her training in constitutional and criminal law and in courtroom procedure in determining the need to subpoena witnesses requested by the district attorney, in presiding at the examination of witnesses, and in determining probable cause. It is the judge's responsibility to ensure procedural fairness.
Id. at 823, 266 N.W.2d 597 (citing State v. O'Connor, 77 Wis.2d 261, 284, 252 N.W.2d 671 (1977)).
¶ 34 In O'Connor, this court stated that the "final responsibility for the proper conduct of such proceedings rests with the presiding judge. . . ." 77 Wis.2d at 284, 252 N.W.2d 671. More recently, we determined that the judge "has final responsibility for the proper conduct of John Doe proceedings." State ex rel. Unnamed Person No. 1 v. State, 2003 WI 30, ¶ 52, 260 Wis.2d 653, 660 N.W.2d 260. Echoing Washington, we stated that the "John Doe judge has authority to issue subpoenas, examine witnesses, adjourn the proceedings, take possession of subpoenaed records, adjudicate probable cause, and issue and seal warrants." Id., ¶ 54, 660 N.W.2d 260.
¶ 35 The cases demonstrate that John Doe proceedings are conducted through the authority of the presiding judge. Allowing that subpoenas may be issued by the clerk of court would confer authority on someone other than the judge, who has historically had the authority associated with such proceedings. It would in essence dilute the John Doe judge's power.
¶ 36 This view also appears to comport with the practice in Wisconsin. A treatise on Wisconsin criminal practice and procedure notes that John Doe proceedings are advantageous to law enforcement officials insofar as they gain access to authority via the judge that is otherwise unavailable.
Invoking a John Doe proceeding is usually advantageous to law enforcement officials because, through the presiding judge, they may avail themselves of powers not otherwise available to them. These include: "the power to subpoena witnesses, take testimony under oath and to compel the testimony of a reluctant witness."
9 Christine M. Wiseman, Nicholas L. Chiarkas, & Daniel D. Blinka, Wisconsin Practice: Criminal Practice and Procedure § 9.11, at 219 (1996)(quoting Washington, 83 Wis.2d at 823 n. 9, 266 N.W.2d 597) (emphasis added). In other words, the powers conferred in a John Doe proceedingincluding the power to subpoena witnesses and compel testimonyderive from the judge, and are otherwise unavailable, including via the subpoena power conferred to clerks of court pursuant to § 885.01(1). See Wis. JICriminal, SM-12 ("Only a judge may conduct a John Doe Proceeding. The judge has the power to subpoena and examine witnesses and to determine the extent of the examination."); see also 1 Wisconsin Judicial Bench Book, CR 48 (2007).
*883 ¶ 37 Thus, the history and current practice of John Doe proceedings support the view that judges have exclusive authority to issue subpoenas in John Doe proceedings. That interpretation is further supported by principles of statutory construction.
¶ 38 Section 968.26 provides John Doe judges shall examine witnesses produced by the complainant and "may, and at the request of the district attorney shall, subpoena and examine other witnesses." Section 885.01(1) provides judges and clerks of court with the authority to issue subpoenas, and § 885.01(2) provides district attorneys with subpoena power. However, if clerks of court and district attorneys have the power under § 885.01 to subpoena witnesses in John Doe proceedings, then the language in § 968.26 regarding subpoenas is superfluous. Construction of statutes should avoid whenever possible interpretations that render language superfluous. Hutson v. State Pers. Comm'n, 2003 WI 97, ¶ 49, 263 Wis.2d 612, 665 N.W.2d 212.
¶ 39 Hipp maintains, however, that the John Doe judge's power to issue subpoenas derives from § 885.01(1). He cites to Wisconsin Family Counseling Servs., Inc. v. State, in which the court of appeals stated that a judge in a John Doe proceeding can exercise his or her authority to issue a subpoena pursuant to § 885.01. 95 Wis.2d at 675, 291 N.W.2d 631. Thus, Hipp maintains that § 885.01(1) subpoena power extends to John Doe proceedings, for clerks of court no less than for judges.
¶ 40 However, Judge Murray's position is not that the John Doe judge's subpoena power derives from § 968.26. Rather, it is that § 968.26 provides a limit to the subpoena power conferred by § 885.01. Thus, although district attorneys, clerks of court, and judges have subpoena power under § 885.01, § 968.26 precludes district attorneys and clerks from issuing subpoenas in John Doe proceedings. Instead, the statute allows that only judges retain their subpoena power.
¶ 41 Further, applying the § 885.01 subpoena provisions to the proceedings here would require applying a more general statute regarding subpoenas where there is a more specific statute controlling subpoenas within the context of John Doe proceedings. This would be contrary to the principle of statutory construction that where two statutes applying to the same subject conflict, the more specific statute is controlling. Lornson v. Siddiqui, 2007 WI 92, ¶ 65, 302 Wis.2d 519, 735 N.W.2d 55.
¶ 42 Hipp also argues that giving judges exclusive subpoena power in John Doe proceedings runs contrary to the investigatory purpose of the statute. See State ex rel. Reimann v. Circuit Court for Dane County, 214 Wis.2d 605, 621, 571 N.W.2d 385 (1997).[6] John Doe proceedings provide for investigation of crimes at the behest of both district attorneys and private complainants. Hipp maintains that disallowing subpoenas to issue from the clerk of court may preclude many complainants from the opportunity for meaningful review, including those who file John Doe petitions pro se. As the court of appeals stated recently, "[f]or some complainants, the John Doe procedures . . . provide their only entrance to the state courts. . . . [W]e do not here intend to *884 close the doors of the courtroom to those persons who may have reason to believe a crime has been committed." State ex rel. Williams v. Fiedler, 2005 WI App 91, ¶ 25, 282 Wis.2d 486, 698 N.W.2d 294.
¶ 43 While we agree with Hipp that it is important to preserve access to the courts for private complainants provided by John Doe proceedings, we are not persuaded that such access is impeded when the judge has exclusive subpoena power in such proceedings. This court has made clear that the John Doe judge's responsibility is to act as a neutral magistrate. In Washington, we stated that the "John Doe judge should act with a view toward issuing a complaint or determining that no crime has occurred. To the extent that the judge exceeds this limitation, there is an abuse of discretion." 83 Wis.2d at 823-34, 266 N.W.2d 597. Further, we wrote that the judge's behavior "should be such as not to impair his or her ability to make an independent determination of probable cause." Id. at 824, 266 N.W.2d 597; see also O'Connor, 77 Wis.2d at 275-76, 252 N.W.2d 671.
¶ 44 In addition, while Hipp claims that a judge may simply refuse a complainant's request that it subpoena witnesses, that issue is not before the court. Both parties agree that there has been no such refusal here. Finally, the argument assumes that there is no remedy in cases where the John Doe judge fails to provide adequate opportunity for the examination of witnesses. In such cases complainants have recourse to supervisory writs pursuant to § 809.51, as in the present case. See Reimann, 214 Wis.2d at 625-26, 571 N.W.2d 385.
¶ 45 We agree with Hipp that this is a case in which a John Doe petition was not properly investigated. However, the problem in this case is not that John Doe judges have exclusive authority to issue subpoenas. Rather, the problem here was in the execution of the proceeding.
¶ 46 Despite the fact that Judge Murray had exclusive authority to issue subpoenas in the case, he failed to inform Hipp that was the case and failed to apprise Hipp that he could request such subpoenas. At the November hearing, Judge Murray emphasized that it was Hipp's responsibility to get witnesses to the examination. When Hipp asked how he was to produce witnesses reluctant to attend, Judge Murray again replied that it was Hipp's responsibility. As he now concedes in his brief, Judge Murray should have responded that he alone had subpoena authority and that Hipp could identify which witnesses he wished to have subpoenaed.
¶ 47 Judge Murray added to the confusion regarding subpoena power at the December hearing. He asked the attending witnesses whether they had been subpoenaed by Hipp and informed them that they "remain" under subpoena. Judge Murray correctly stated the law at the January hearing when he informed Hipp that "[i]f anybody has subpoena power, it's me." However, by that time the damage had been done. Hipp had sought to produce witnesses by requesting that the clerk of circuit court issue subpoenas pursuant to § 885.01. His response was appropriate given Judge Murray's admonition that it was Hipp's responsibility to produce the witnesses and Judge Murray's failure to apprise Hipp of the possibility of requesting that he issue the subpoenas.
¶ 48 In essence, Judge Murray was correct that he had exclusive authority to issue subpoenas in the proceeding. However, his actions prevented Hipp from being able to have subpoenas issued for *885 the witnesses Hipp wanted.[7] Based on this error, we agree with the court of appeals that the writ of mandamus should be granted. Further, we instruct that upon remand subpoenas should be issued.
¶ 49 In his initial brief to this court Judge Murray argued that this case is moot on the ground that the statute of limitations for the alleged crime has expired. See Wis. Stat. § 939.74(1). However, the parties agree that the record here is insufficient for a determination of the issue. We agree, and therefore decline to address the statute of limitations issue here. If the judge conducting this proceeding on remand determines that the crimes alleged in Hipp's John Doe petition are beyond the applicable statute of limitations, the judge may deny the petition without subpoenaing and examining the designated witnesses.[8]
¶ 50 In addition to requesting a restoration of the John Doe hearing and ruling on the validity of the subpoenas issued, Hipp's writ petition contained requests for substitution of the John Doe judge and appointment of a new district attorney. We have addressed the restoration of the John Doe proceeding and the validity of the subpoenas issued by the clerk of circuit court. The court of appeals declined to grant Hipp's requests for a new judge and different district attorney, and Hipp has not argued that the court of appeals erred in that respect. 305 Wis.2d 148, ¶ 16, 738 N.W.2d 570. We therefore do not address that part of the court of appeals decision.
¶ 51 Thus, based upon the language of § 968.26, the history of the statute, and principles of statutory construction, we determine that a John Doe judge has exclusive authority to subpoena witnesses for a John Doe hearing. However, Judge Murray's errors prevented Hipp from having subpoenas issued to his witnesses.

IV
¶ 52 In sum, we determine that a John Doe judge has exclusive authority to subpoena witnesses in a John Doe proceeding based upon the language of the John Doe statute (§ 968.26), the history of its application, and principles of statutory construction. The case does not present the issue of whether a John Doe judge is required to subpoena every witness that a John Doe petitioner requests. We save that issue for another day.
*886 ¶ 53 Ultimately, however, we agree with the court of appeals that a writ of mandamus should be granted and we instruct that upon remand the John Doe judge here should issue subpoenas. Accordingly, we affirm the court of appeals, albeit with a different rationale.
The decision of the court of appeals is affirmed.
¶ 54 SHIRLEY S. ABRAHAMSON, C.J. did not participate.
¶ 55 LOUIS B. BUTLER, JR., J. (concurring).
I agree with the majority that complainant Adrian T. Hipp's petition for writ of mandamus should be granted. However, I write separately because I would uphold the writ on the same grounds reached by the court of appeals: a judge in a John Doe proceeding does not have exclusive authority to issue subpoenas, and John Doe complainants are not statutorily precluded from the right to obtain subpoenas from a clerk of courts as accorded by Wis. Stat. § 885.01.
¶ 56 The majority of this court generally concludes that a writ should be granted and the court of appeals' decision affirmed because Judge Murray failed in executing his "exclusive authority to issue subpoenas"[1] by giving the complainant and witnesses inaccurate and confusing information about the subpoena procedure, and by engaging in ex parte communications with the assistant district attorney. See majority op., ¶¶ 45-48 & n. 7, ¶ 52. Because of these errors, the majority instructs that Hipp's subpoena request should be granted. I agree with this result.
¶ 57 However, this result should be reached through the affirmance of the court of appeals' order pertaining to the first and fourth requests of the writ petition, and its validation of the clerk of courts' subpoenas as requested by the petition and the memorandum in support of the petition. In contrast, while affirming the court of appeals' grant of Hipp's writ petition, the majority does not appear to recognize that the court of appeals' mandate it affirms includes a validation of the subpoenas already issued by the clerk of courts in direct response to the petition's fourth request. While purporting to affirm the court of appeals' order granting the writ, it seems clear that the majority would not in fact grant the same writ agreed to by the court of appeals, but would require new subpoenas to be issued by the John Doe judge rather than by the clerk of courts. It is therefore unclear to me the extent to which the majority is actually agreeing with the terms of Hipp's petition as granted by the court of appeals. While I agree with the majority that Hipp's petition should be granted, I also conclude, unlike the majority, that affirming the court of appeals' order granting the petition includes validating the subpoenas issued by the clerk of courts prior to the John Doe hearing.
¶ 58 I strongly disagree with the majority's analysis that the judge in a John Doe hearing has exclusive power to issue subpoenas. The majority's ruling fails to take into account the plain meaning of Wis. Stat. § 968.26, which together with Wis. Stat. § 885.01, allows the clerk of courts to issue subpoenas for John Doe hearings.
¶ 59 This court has held that "the purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI 58, ¶ 44, 271 Wis.2d 633, 681 N.W.2d 110. In order *887 to uphold this purpose, when interpreting a statute we start "with the language of the statute," and "[i]f the meaning of the statute is plain, we ordinarily stop the inquiry." Id., ¶ 45 (citations omitted). "Statutory language is given its common, ordinary, and accepted meaning," unless the word is technically or specifically defined. Id.
¶ 60 Wisconsin Stat. § 968.26, which sets forth the rules for a John Doe proceeding, states in relevant part:
If a person complains to a judge that he or she has reason to believe that a crime has been committed within his or her jurisdiction, the judge shall examine the complainant under oath and any witnesses produced by him or her and may, and at the request of the district attorney shall, subpoena and examine other witnesses to ascertain whether a crime has been committed and by whom committed.
(Emphasis added.)
¶ 61 The operative language of the statute is "any witnesses produced by [the complainant]." The word "produce" has a specific legal meaning in the context of litigation, witnesses, and subpoenas, and we therefore examine its legal definition. See Kalal, 271 Wis.2d 633, ¶ 45, 681 N.W.2d 110.
¶ 62 Black's Law Dictionary defines "produce" as: "1. To bring into existence; to create. 2. To provide (a document, witness, etc.) in response to subpoena or discovery request. 3. To yield (as revenue). 4. To bring (oil, etc.) to the surface of the earth." Black's Law Dictionary 1245 (8th ed.2004)(emphasis added). The second definition is directly on point in this case, illustrating that the term "produce" can mean providing a witness by a subpoena.
¶ 63 It is well established and recognized that witnesses are "produced" through subpoenas. See State v. Schaefer, 2008 WI 25, ¶ 44, ___ Wis.2d ___, 746 N.W.2d 457 ("Considered broadly, courts and attorneys of record have the power to compel the attendance of witnesses and the production of evidence by subpoena in any proceeding.").
¶ 64 The ability to "produce" a witness necessarily includes the ability to compel the appearance of the witness through a subpoena. Moreover, the words of the statute could not be more clear: witnesses for the complainant are produced "by him or her." Therefore, the express language in Wis. Stat. § 968.26 recognizing a John Doe complainant's ability to "produce" witnesses necessarily entails recognition that the complainant has the right to subpoena those witnesses.
¶ 65 Furthermore, I agree with Hipp's contention that his power to subpoena witnesses extends from Wis. Stat. § 885.01, which is the overarching statute dealing with subpoenas in all legal proceedings. Subsection 885.01(1) states that a subpoena may be issued:
By any judge or clerk of a court or court commissioner or municipal judge, within the territory in which the officer or the court of which he or she is the officer has jurisdiction, to require the attendance of witnesses and their production of lawful instruments of evidence in any action, matter or proceeding pending or to be examined into before any court, magistrate, officer, arbitrator, board, committee or other person authorized to take testimony in the state.
(Emphasis added.)
¶ 66 There is nothing in either Wis. Stat. § 968.26 or Wis. Stat. § 885.01 to indicate that John Doe proceedings are exempt from the universal application and reach of § 885.01(1). Not only does the plain text of these statutes fail to exclude John Doe complainants from basic subpoena rights, *888 but the statutes do not conflict with each other. As such, the majority's observation of the general rule that if two statutes conflict the court should apply the more specific one has little relevance to the issues the case presents. See majority op., ¶ 41.
¶ 67 Even if there were some statutory language conflict, this court has held that "[i]f the potential for conflict between the statutes is present, we will read the statutes to avoid such a conflict if a reasonable construction exists." Kolupar v. Wilde Pontiac Cadillac, Inc., 2007 WI 98, ¶ 28, 303 Wis.2d 258, 735 N.W.2d 93; see also Gerczak v. Estate of Gerczak, 2005 WI App 168, ¶ 10, 285 Wis.2d 397, 702 N.W.2d 72 ("Conflicts between statutes are disfavored and will be held not to exist if the statutes may be otherwise construed."). Not only must we attempt to harmonize statutes if they are seemingly in conflict, we must do so "if it is possible, in a way which will give each full force and effect." City of Milwaukee v. Kilgore, 193 Wis.2d 168, 184, 532 N.W.2d 690 (1995).
¶ 68 Such harmonization is not difficult in this case. While Wis. Stat. § 885.01 grants broad subpoena power, Wis. Stat. § 968.26 merely directs the judge as to how to deal with subpoenas in John Doe proceedings. The proper reading of the term "produced," as discussed above, allows both statutes to coexist. Thus, we should choose this construction, which avoids statutory conflict and gives both statutes full force and effect.
¶ 69 In order to read Wis. Stat. § 968.26 as barring John Doe complainants from exercising basic subpoena rights under Wis. Stat. § 885.01, the majority essentially reads language into the statute that gives the John Doe judge exclusive subpoena power. Yet the majority itself acknowledges that § 968.26 "is not explicit as to whether the [John Doe] judge's authority to subpoena witnesses is exclusive." Majority op., ¶ 26.
¶ 70 As this court has previously held, we "can only construe. [We] cannot legislate. Words should not be read into or read out of a plain statute. To adopt the construction asked would be to make a new statute. This we cannot do." Rogers-Ruger Co. v. Murray, 115 Wis. 267, 271, 91 N.W. 657 (1902); see also Mellen Lumber Co. v. Indus. Comm'n of Wisconsin, 154 Wis. 114, 120, 142 N.W. 187 (1913) ("Where the language used in a statute is plain, the court cannot read words into it that are not found therein either expressly or by fair implication, even to save its constitutionality, because this would be legislation and not construction.").
¶ 71 State ex rel. Long v. Keyes, 75 Wis. 288, 44 N.W. 13 (1889), establishes the applicability of Wis. Stat. § 885.01 to John Doe proceedings. The Keyes opinion, which addresses the predecessor statutes to both Wis. Stat. §§ 968.26 and 885.01,[2] provides:

*889 Such witnesses must be produced by the complainant. He cannot `produce' them in any other way than to suggest their names to the magistrate. If they come voluntarily with the complainant, he cannot be said to produce them in any other way than to make them known to the justice as witnesses who know something about the case. They are produced as parties produce their witnesses in court. [Emphasis added.] They may come voluntarily or on subpoena [emphasis added], and on attachment if necessary. . . . The complainant produces or suggests or names a great many witnesses at the time, or at another time, and at different times during the progress of the examination. They are witnesses, and therefore may be subpoenaed.
Id. at 293, 44 N.W. 13.
¶ 72 The majority concludes that the court in Keyes "did not determine that a John Doe complainant could produce a witness by having the witness subpoenaed by an entity other than the John Doe judge." Majority op., ¶ 31. However, in order to reach this conclusion, the majority omits the most critical sentences from the Keyes passage it cites. Id., ¶ 30 (citing Keyes, 75 Wis. at 293, 44 N.W. 13).
¶ 73 Specifically, the majority omits the sentence that directs that "[t]hey [witnesses] are produced as parties produce their witnesses in court," preceding the sentence, "[t]hey may come voluntarily or on subpoena, and on attachment if necessary." Keyes, 75 Wis. at 293, 44 N.W. 13 (emphasis added). The omitted sentence from Keyes directly supports Hipp's proposition that Wis. Stat. § 885.01 authorizes him to subpoena witnesses via the clerk of courts. A proper reading of Keyes recognizes that John Doe complainants may produce witnesses just "as parties produce their witnesses in court," which under § 885.01 includes subpoenas issued by the clerk of courts.
¶ 74 Furthermore, the court in Keyes, id. at 296, 44 N.W. 13, quoted with approval People v. Hicks, 15 Barb. 153 (N.Y.Sup. 1853). Hicks, in turn, explained:
When the statute says that the magistrate shall examine any witnesses who may be produced by the complainant, it means any witnesses who may be produced either voluntarily or by means of such process as the law allows to compel the attendance of witnesses. Every party to a suit produces the witnesses on his behalf at the trial. But in doing so he is not confined to such witnesses as voluntarily appear. If necessary, he resorts to compulsion.
Hicks, 15 Barb. at 160.
¶ 75 The majority goes to great lengths to describe the far-reaching power of John Doe judges in order to counter the fact that there is nothing explicit or implicit in Wis. Stat. § 968.26 to give the judge exclusive subpoena power, and that the court in Keyes indicates that the complainant retains statutory subpoena rights. However, it does not logically follow that just because the judge in a John Doe proceeding must subpoena and examine witnesses at a district attorney's request and may examine other witnesses produced by John Doe complainants, the judge has additional power(s) not so enumerated, including exclusive *890 subpoena power that preempts a John Doe complainant's full Wis. Stat. § 885.01 rights.
¶ 76 The majority claims that allowing the clerk of courts to issue subpoenas would dilute the power of judges in John Doe proceedings. Majority op., ¶ 35. However, the majority neglects to point out that the subpoena power John Doe judges possess is already not absolute, with the statute imposing a mandate on John Doe judges, who "shall" subpoena any witness requested by the prosecutor. Furthermore, this court has previously explained that a John Doe judge has broad, but not unlimited powers. Custodian of Records for the Legislative Tech. Servs. Bureau v. State, 2004 WI 65, ¶ 10, 272 Wis.2d 208, 680 N.W.2d 792. A John Doe judge cannot exceed the powers granted to him or her without engaging in an erroneous exercise of discretion. Id.; see also State v. Washington, 83 Wis.2d 808, 824, 266 N.W.2d 597 (1978) ("If the facts show that the judge has extended the proceeding in duration or scope beyond the reasonable intendment of the statute or has otherwise improperly conducted the proceeding and intends to persist, he or she can be restrained by writ of prohibition for abuse of discretion.").
¶ 77 The power of a John Doe judge is significant only for fulfilling the purpose of the proceeding. See State ex rel. Reimann v. Circuit Court for Dane County, 214 Wis.2d 605, 621, 571 N.W.2d 385 (1997)(The purpose of John Doe proceedings is two-fold: first, it "is intended as an investigatory tool used to ascertain whether a crime has been committed and if so, by whom"; and second, it "is designed to protect innocent citizens from frivolous and groundless prosecutions.").
¶ 78 These ends are not met by taking away a John Doe complainant's basic subpoena rights. As this court noted in Reimann:
For some complainants, the John Doe procedures available under Wis. Stat. § 968.26 provide their only entrance to the state courts. Although we believe that circuit court judges must perform some gate-keeping functions under Wis. Stat. § 968.26, we do not here intend to close the doors of the courtroom to those persons who may have reason to believe a crime has been committed.
Id. at 625, 571 N.W.2d 385. The majority's interpretation would grant new powers to a John Doe judge beyond those the legislature vests in judges through § 968.26, while reciprocally denying John Doe complainants their legislatively authorized subpoena rights. The denial of subpoena rights and judicial creation of exclusive subpoena powers in a John Doe judge do not serve § 968.26's primary purposes of facilitating criminal investigations and warding against frivolous prosecutions.
¶ 79 For all of the above reasons, I agree with the majority's holding that the petition for writ of mandamus be granted, but I cannot share in their limitation of complainants' rights in John Doe hearings in derogation of the plain language and meaning of the controlling statutes. I therefore respectfully concur.
NOTES
[1] See Hipp v. The Honorable Marshall B. Murray, 2007 WI App 202, 305 Wis.2d 148, 738 N.W.2d 570; Wis. Stat. § (Rule) 809.51(1) (2005-06).
[2] All references to the Wisconsin Statutes are to the 2005-06 version unless otherwise noted.
[3] Although the transcript of the hearing reveals some uncertainty as to its nature, both Judge Murray and Hipp now are in accord that it was a probable cause hearing. A John Doe judge is required to conduct a hearing if the John Doe petition meets the threshold test of alleging objective, factual assertions sufficient to support a reasonable belief that a crime has been committed. State ex rel. Reimann v. Circuit Court for Dane County, 214 Wis.2d 605, 623, 571 N.W.2d 385 (1997). As Judge Murray acknowledges in his brief, although he "never formally determined that Hipp's John Doe petition met the threshold test, he implicitly determined that it met the threshold test when he proceeded with a hearing on the John Doe petition."
[4] Judge Murray also raised and briefed a second issue of whether a John Doe judge is required to subpoena every witness that a John Doe petitioner requests and to examine every such witness at the John Doe proceeding. In his reply brief and at oral argument, however, Judge Murray conceded that the facts of this case do not present the issue of a John Doe judge's discretion in subpoenaing and examining witnesses because Judge Murray never refused to subpoena or examine any of Hipp's witnesses.
[5] Section 885.01 provides in relevant part:

Subpoenas, who may issue. The subpoena need not be sealed, and may be signed and issued as follows:
(1) By any judge or clerk of a court or court commissioner or municipal judge, within the territory in which the officer or the court of which he or she is the officer has jurisdiction, to require the attendance of witnesses and their production of lawful instruments of evidence in any action, matter or proceeding pending or to be examined into before any court, magistrate, officer, arbitrator, board, committee or other person authorized to take testimony in the state.
[6] The John Doe statute serves two primary purposes. First, it is an investigatory tool which allows the judge to determine whether a crime has been committed, and if so by whom. State ex rel. Reimann v. Circuit Court for Dane County, 214 Wis.2d 605, 621, 571 N.W.2d 385 (1997). Second, it protects innocent persons from frivolous and groundless prosecutions. Id.
[7] We also note that Reddin's actions in preventing Hipp's witnesses from appearing are problematic. Before the January hearing, Reddin took it upon himself to advise the subpoenaed witnesses that they did not have to appear. Judge Murray concedes in his brief that Reddin's actions were inappropriate. He states that Reddin should have instead filed a motion requesting Judge Murray to quash the subpoenas. We agree.

The court of appeals expressed concern regarding Reddin giving, and Judge Murray's willingness to receive, ex parte advice regarding Hipp's ability to have subpoenas issued. It reminded "the bench and the bar" of the obligations presented by SCR 60.04(1)(g) and SCR 20:3.5(b) and the requirement that the behavior of the John Doe judge "should be such as not to impair his or her ability to make an independent determination of probable cause." State v. Washington, 83 Wis.2d 808, 824, 266 N.W.2d 597 (1978). We join with the court of appeals in its expression of concern.
[8] Hipp acknowledges that a threshold determination must be made regarding the statute of limitations. In determining whether the statute of limitations on the alleged crimes has expired, the judge on remand must consider the time since the alleged crime occurred as well as events, equities, Coleman's public residence in the state, and other factors that may have tolled the running of the statute of limitations. See Wis. Stat. § 939.74(3).
[1] Majority op., ¶ 46.
[2] For example, State ex rel. Long v. Keyes, 75 Wis. 288, 290-91, 44 N.W. 13 (1889), cites Wis. Stat. § 4776 (1878) and Wis. Stat. § 4053 (1889). Section 4776 provides:

Upon complaint made to any such magistrate, that a criminal offense has been committed, he shall examine, on oath, the complainant, and any witnesses produced by him, and shall reduce the complaint to writing, and shall cause the same to be subscribed by the complainant; and if it shall appear that any such offense has been committed, the magistrate shall issue a warrant, reciting the substance of the accusation, and requiring the officer to whom it shall be directed forthwith to take the person accused, and bring him before the said magistrate, or before some other magistrate of the county, to be dealt with according to law. . . .
Section 4053 provides that subpoenas may be issued
[b]y any judge or clerk of a court of record or court commissioner, or justice of the peace, municipal judge or police justice within the territory in which such officer, or the court of which he is such officer, has jurisdiction, to require the attendance of witnesses and their production of lawful instruments of evidence in any action, matter or proceeding pending or to be examined into before any court, magistrate, officer, arbitrator, board, committee or other person authorized to examine witnesses or hear testimony, in the state.